NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

AMANDA B., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, R.I., A.I., *Appellees.*

No. 1 CA-JV 18-0330
FILED 3-26-2019

Appeal from the Superior Court in Mohave County
No. B8015JD201704065
The Honorable Derek C. Carlisle, Judge

**AFFIRMED**

COUNSEL

Harris & Winger, P.C., Flagstaff
By Chad Joshua Winger
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Autumn Spritzer
*Counsel for Appellee Department of Child Safety*

**MEMORANDUM DECISION**

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court,
in which Judge Maria Elena Cruz and Judge Kenton D. Jones joined.

**W I N T H R O P**, Judge:

¶1          Amanda B. ("Mother") appeals the juvenile court's order terminating her parental rights to her biological children, R.I. and A.I. ("the children"), on the statutory grounds of chronic substance abuse and prior removal.[1] *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(3), (11).  She challenges the sufficiency of the court's findings, the evidence supporting the grounds for severance, and whether her due process rights were violated with regard to the (B)(11) ground.  For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY[2]

¶2          Mother has a history of substance abuse, and her involvement with illegal substances began no later than 2007 when, at the age of nineteen, she pled guilty to facilitation of transportation of marijuana for sale, a class six felony.  By February 2010, Mother was abusing methamphetamine and neglecting her biological daughter, K.W., who was born in 2008.  In October 2010, Mother gave birth to a son, H.I., who tested positive for methamphetamine.  Mother's parental rights to both K.W. and H.I. were severed, and they are not parties to this appeal.

¶3          In 2011, R.I. was born, and when A.I. was born in December 2012, both Mother and A.I. tested positive for methamphetamine.  Mother admitted using methamphetamine during the first twenty-eight weeks she was pregnant with A.I., but claimed she stopped using it after learning she was pregnant—approximately eight weeks before A.I.'s birth.  An unsuccessful in-home dependency ensued before the children were removed from Mother's care for approximately eight months.  After their return, the children were removed for a second time in November 2013 when Mother left them with a woman who screamed at them, prompting a police welfare check.  The woman had an outstanding felony warrant in California and "appear[ed] to be on drugs," which Mother reportedly had provided as payment for the children's care.  During this time, Mother was reportedly using methamphetamine and selling it from her home.

---

[1]     The children's biological father ("Father") consented to the termination of his parental rights, and he is not a party to this appeal.

[2]     We view the facts and reasonable inferences therefrom in the light most favorable to affirming the juvenile court's order.  *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010).

¶4          The children were returned to Mother sometime between February and April 2014, but were removed again in January 2015, after Mother was arrested for possession of a "meth pipe." Mother admittedly was using methamphetamine until at least June 2015, but eventually successfully completed substance-abuse treatment and testing, and the children were returned to her by August 2016.[3]

¶5          After the children's return, Mother allowed them to be exposed to domestic violence, including physical fights with Father, during which Mother threw things. Also, Father had choked Mother and pointed a loaded pellet gun at R.I. before shooting the family's television.[4] Ostensibly as a result of the domestic violence, R.I. developed PTSD, and both children developed serious behavioral issues and were in need of counseling, but Mother failed to obtain the necessary mental-health treatment for them.[5]

¶6          In the fall of 2017, Mother was chronically late dropping off and picking up A.I. from preschool. Mother frequently slept during the day when she was supposed to be supervising the children, an indication she might again be abusing substances and was neglecting the children. She also admitted leaving the children in the care of a nineteen-year-old woman who was on probation, did not have custody of her own children, and could not visit her mother's home because of "some kind of protective order."

¶7          On December 5, 2017, Mother again failed to pick up A.I. from preschool on time, and the school was unable to contact her by phone. The school finally called the police, who found Mother's car parked in the driveway with her cell phone inside. Although officers knocked on the

---

[3]     Although Mother argues the juvenile court's August 2016 order for return of the children was not admitted into evidence, the court could take judicial notice of its own records or those of another action tried in the same court. *In re Sabino R.*, 198 Ariz. 424, 425, ¶ 4 (App. 2000).

[4]     Father has been arrested and imprisoned numerous times, including most recently for a dangerous drug violation.

[5]     R.I. also had untreated problems with his ears and failed several hearing exams before he was successfully treated. Further, both children subsequently exhibited behaviors such as hiding food and using it as a calming technique, an indicator that they did not have reliable access to food while with Mother.

residence's door and windows, Mother did not answer, despite the presence of a barking dog inside. The home had numerous broken windows covered with plywood, sheets, and mattresses. The officers returned to the school, and by that time, Mother had called, claiming she had just woken up.[6] When Mother finally arrived nearly two hours late, the officers arrested her on an outstanding warrant for failure to pay fines on her 2015 drug paraphernalia charge.

¶8 Father was incarcerated at that time, and the Department of Child Safety ("DCS") removed the children and filed a dependency petition. DCS offered Mother reunification services, including substance-abuse testing, mental-health treatment, parenting classes, supervised visitation, and transportation, but she largely chose not to participate and did not successfully complete any of the services, claiming they were not "required" and conflicted with her job at a fast food restaurant, which was "more important." Mother did provide one clean urinalysis sample immediately after being released from jail on December 15, but she left the testing facility without completing a hair-follicle test that might have detected drug use over a longer period than the urinalysis test. She also participated in a couple of telephonic visits until they were stopped due to a misunderstanding about Father's authorization to participate, but she failed to resume phone visits even after it was made clear she could call the children. Although DCS attempted to set up supervised visitation, Mother did not respond to attempts to contact her.

¶9 In February 2018, DCS moved to terminate Mother's parental rights on the grounds of neglect, chronic substance abuse, and prior removal. *See* A.R.S. § 8-533(B)(2), (3), (11).

¶10 In March 2018, the juvenile court found the children dependent as to Mother. The court ordered Mother to complete a hair-follicle test within two days after the dependency hearing, but Mother failed to comply, and she did not participate in further substance-abuse testing or treatment, supervised visitation, or other reunification services. She did, however, accept an invitation to spend Easter with the children and their foster family. During that visit, it appeared Mother "had lost a considerable amount of weight" and wore sunglasses "most of the time," signs consistent with methamphetamine use.

---

[6] Although Mother states she overslept because she had been working the graveyard shift, she testified at the dependency adjudication hearing that she had stopped working that shift before December 5.

**¶11** On July 11, 2018, the juvenile court conducted the severance adjudication hearing. Although DCS had offered Mother transportation to the hearing, she declined the offer and ultimately arrived approximately two hours and fifteen minutes late without explanation. At the close of the hearing, the court took the severance motion under advisement and later found DCS had proven the substance-abuse and prior-removal grounds by clear and convincing evidence and that termination of Mother's rights was in the children's best interests.

**¶12** Mother filed a timely notice of appeal. We have jurisdiction pursuant to A.R.S. § 8-235(A) and Arizona Rule of Procedure for the Juvenile Court ("Rule") 103(A).

**ANALYSIS**

*I. Standard of Review*

**¶13** A court may sever parental rights if it finds clear and convincing evidence of one of the statutory grounds for severance and finds by a preponderance of the evidence that severance is in the children's best interests. *See* A.R.S. §§ 8-533(B), -537(B); *Kent K. v. Bobby M.*, 210 Ariz. 279, 281-82, 288, ¶¶ 7, 41 (2005).

**¶14** As the trier of fact in a termination proceeding, the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (quoting *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004)). Thus, the resolution of conflicts in the evidence is uniquely the province of the juvenile court, and we will not reweigh the evidence in our review. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 12 (App. 2002). Instead, we review the juvenile court's order to determine if reasonable evidence supports its factual findings. *Matthew L.*, 223 Ariz. at 549, ¶ 7.

**¶15** Under Rule 66(F)(2)(a), if DCS has met its burden of proof at the termination adjudication hearing, the juvenile court shall "[m]ake specific findings of fact in support of the termination of parental rights and grant the motion or petition for termination." To satisfy the rule, the juvenile court must specify at least one factual finding sufficient to support each conclusion of law. *Ruben M. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 236, 240, ¶ 22 (App. 2012). The findings of fact and conclusions of law required "should be sufficiently specific to enable the appellate court to provide effective review," *id.* at 241, ¶ 25, but the juvenile court need not list every

fact relied upon in making its findings, *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 451-52, ¶ 19 (App. 2007).

## II. *Mother's Challenges to the Court's Statutory Findings*

### A. *Chronic Substance Abuse*

**¶16** Mother argues the juvenile court erred in terminating her parental rights based on chronic substance abuse. *See* A.R.S. § 8-533(B)(3). She contends the court failed to make "specific, articulated findings" establishing each element of that ground and the findings were not supported by sufficient evidence. Even assuming *arguendo* Mother has not waived her argument regarding the adequacy of the court's findings by failing to raise it below,[7] we find no error.

**¶17** The juvenile court may terminate parental rights when a parent's history of chronic substance abuse renders her unable to discharge parental responsibilities "and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period." A.R.S. § 8-533(B)(3). Severance on this ground requires a finding that DCS "made reasonable efforts to reunify the family or that such efforts would have been futile." *Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453, ¶ 12 (App. 2005) (citation omitted). DCS fulfills its statutory mandate when it provides the parent with the time and opportunity to participate in programs designed to help her become an effective parent. *Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994).[8]

---

[7] We may apply waiver to a complaint of insufficient written findings when it is first asserted on appeal and the order, as it does here, "includes at least some statutorily required factual findings." *See Logan B. v. Dep't of Child Safety*, 244 Ariz. 532, 536, ¶ 10 (App. 2018) (citations omitted).

[8] Although Mother argues DCS failed to make diligent reunification efforts with regard to the subsection (B)(11) (prior removal) ground, she distinguishes diligent from reasonable efforts and does not argue DCS failed to make reasonable efforts with regard to the subsection (B)(3) (chronic substance abuse) ground—thus implicitly conceding DCS's efforts were reasonable. Further, because Mother does not argue DCS failed to make reasonable efforts to provide appropriate reunification services, she has abandoned and waived any argument in this regard. *See Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 577, ¶ 5 (App. 2017).

¶18 Long-lasting substance abuse "need not be constant to be considered chronic." *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 377, ¶ 16 (App. 2010). A "temporary abstinence from drugs and alcohol does not outweigh [a parent's] significant history of abuse or h[er] consistent inability to abstain during th[e] case." *Id.* at 379, ¶ 29. A parent's failure to remedy substance abuse when faced with the imminent loss of her children is evidence the parent has not overcome her dependence on the substance. *Id.*

¶19 The juvenile court may evaluate evidence of a parent's prior substance abuse in determining whether the ground of chronic substance abuse has been established. *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 287, ¶¶ 19-20 (App. 2016). In determining whether a parent's substance abuse will continue, a court may consider the parent's history of sobriety and relapse, the types of substances abused, the length and frequency of use, and effects on the parent's behavior associated with the substance abuse. *Id.* at ¶ 20. The circumstances surrounding periods of sobriety are also important; for example, a temporary abstinence compelled by incarceration or other confinement does not demonstrate that a parent is able to maintain sobriety in a non-custodial setting consistent with the conditions under which parenting occurs. *See Raymond F.*, 224 Ariz. at 379, ¶ 29. Ultimately, "a child's interest in permanency must prevail over a parent's uncertain battle with drugs." *Jennifer S.*, 240 Ariz. at 287, ¶ 17 (citations omitted).

¶20 In this case, the juvenile court acknowledged Mother's history with marijuana and methamphetamine, finding she had a history of methamphetamine use that began before she became pregnant with H.I. in 2010 and continued during that pregnancy—while she was also supposed to be caring for K.W. Mother admittedly continued to use methamphetamine, including for at least twenty-eight of the thirty-six weeks she was pregnant with A.I. in 2012. The juvenile court found that both H.I. and A.I. tested positive for methamphetamine at birth, as did Mother. The court also found Mother had admitted using drugs when A.I. and R.I. were removed and until at least June 4, 2015. The court noted Mother's apparent sobriety—achieved while receiving substance-abuse treatment and confirmed through testing—from March 2016 to August 2016, and her negative urinalysis test—obtained immediately after her release from jail on December 15, 2017. However, the court also noted Mother's failure to concurrently provide a hair-follicle test on December 15, her refusal to obey the court's order to complete a hair-follicle test within a few days of the March 2018 dependency adjudication hearing, and her

failure to participate in any drug testing, screening, or counseling from December 2017 through the July 2018 severance hearing.

¶21          Mother argues that, due to the lack of drug test results, DCS presented "no evidence" she abused any substances after June 4, 2015. However, although the juvenile court did not explicitly make this finding, Mother's failure to comply with the court's March 2018 order to complete a hair-follicle test may be deemed a "positive" test. *See In re Richard M.*, 196 Ariz. 84, 86, ¶ 9 (App. 1999); *see also Gabriel J. v. Ariz. Dep't of Econ. Sec.*, 1 CA-JV 12-0233, 2013 WL 773054, at *2, ¶ 8 (Ariz. App. Feb. 28, 2013) (mem. decision). Moreover, noting there had not been—and obviously, given Mother's non-cooperation, could not be—confirmation of recent drug use through actual testing, the court went on to detail substantial circumstantial evidence indicating Mother's continued substance abuse and attendant inability to discharge parental responsibilities, including routinely sleeping when she was supposed to be caring for the children,[9] her significant weight loss, the unusual appearance of her eyes, and her consistent and often extreme tardiness both in picking up and dropping off A.I. at school and in attending required court appearances—all findings supported by the record.[10] This evidence as a whole supports the reasonable inference that a nexus exists between Mother's continued substance abuse and her inability to deal with critical personal responsibilities, including parental responsibilities. With respect to the likelihood that Mother's chronic substance abuse would continue for a prolonged indeterminate period, the court relied on the danger of relapse in light of Mother's history and her refusal to engage in any substance-abuse assessment, testing, or treatment. Mother's ability to achieve sobriety was doubtful in light of her history of relapse, despite previously successfully completing substance-abuse treatment. And despite multiple prior dependencies and related treatment,

---

[9]          DCS's witnesses testified Mother's excessive sleeping and chronic tardiness were consistent with the "drowsiness" associated with "coming down off" certain drugs, including methamphetamine. Further, when the parent of a child in out-of-home custody refuses to complete substance-abuse testing—as Mother had refused—it often indicates the parent is abusing substances and attempting to cover it up, as may the failure to communicate with DCS and participate in reunification services.

[10]         In considering the prior removal ground, the court also cited evidence that Mother had concomitantly exposed the children to domestic violence, failed to address medical and behavioral issues involving the children, and left the children with an inappropriate caregiver, as she had previously done in November 2013.

she had failed to take her addiction seriously enough to avoid or develop coping skills to deal with the "triggers" that cause her to resort to substance abuse. Reasonable evidence supported these findings and the court's conclusion that termination of Mother's parental rights was warranted on the ground of chronic substance abuse.

**¶22** Mother nonetheless argues the evidence supporting chronic substance abuse was "so weak" that the juvenile court abused its discretion and shifted the burden of proof when it concluded that ground had been met. We disagree. The court's reliance on circumstantial evidence and Mother's refusal to comply with substance-abuse testing and treatment allowed for a reasonable inference of ongoing substance abuse that will continue due to Mother's failure to meaningfully engage in treatment. Although Mother could have rebutted that evidence by submitting clean substance-abuse tests and cooperating with DCS's attempts to provide reunification services, she chose not to do so. The juvenile court's reliance on circumstantial evidence of drug use in the absence of rebutting evidence was well within the court's authority to weigh the evidence and draw reasonable inferences from that evidence, *see Jordan C.*, 223 Ariz. at 93, ¶ 18, and did not shift the burden of proof.

**¶23** Finally, in arguing the juvenile court's findings were insufficient, Mother relies on *Logan B.*, in which the juvenile court issued an order "devoid of any factual findings to support the legal conclusions about the statutory ground for termination or factual findings to justify that termination was in the children's best interests." 244 Ariz. at 536, ¶ 6. As Mother concedes, however, the court in this case "did make some factual findings in the record to support the [chronic substance abuse] ground." Moreover, the factual findings were adequate. They covered the necessary statutory elements and were sufficiently specific to support the decision and allow effective appellate review. *See id.* at 537-38, ¶¶ 14-18. The court made written findings supported by reasonable evidence that established the required elements of the chronic substance abuse ground.

### B. *Prior Removal*

**¶24** Mother also argues insufficient evidence supports termination of her parental rights on the ground of prior removal, *see* A.R.S. § 8-533(B)(11), and the court violated her due process rights by finding termination on this ground.

**¶25** However, "[i]f clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance,

we need not address claims pertaining to the other grounds." *Jesus M.*, 203 Ariz. at 280, ¶ 3 (citations omitted); *see also* A.R.S. § 8-533(B) (requiring that evidence sufficient to justify the termination of the parent-child relationship include "any one" of the enumerated termination grounds). Because reasonable evidence supports the court's decision to terminate Mother's parental rights under A.R.S. § 8-533(B)(3), we need not and therefore do not address this argument.

### III. Best Interests

**¶26** Mother does not challenge, and thus has waived any argument regarding, the juvenile court's finding that severance was in the children's best interests. *See Crystal E.*, 241 Ariz. at 577, ¶ 5. Nonetheless, we note that reasonable evidence supports the finding. *See generally Maricopa Cty. Juv. Action No. JS–500274*, 167 Ariz. 1, 5 (1990) (recognizing that "best interests of the child are a necessary, but not exclusively sufficient, condition for an order of termination"). Here, as the juvenile court found, the children are residing in an adoptive placement that provides them with structure, stability, and permanency and is meeting all their needs, including their counseling and medical needs. *See Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 5 (App. 1998). Also, termination of Mother's rights furthers the plan of adoption, which would provide the children with continued stability and permanency. *See Oscar O.*, 209 Ariz. at 334, ¶ 6. Moreover, as we have recognized, the children's interest in permanency must prevail over Mother's uncertain battle with drugs. *See Jennifer S.*, 240 Ariz. at 287, ¶ 17. Accordingly, the court's finding that terminating Mother's parental rights was in the children's best interests is supported by reasonable evidence in the record.

### CONCLUSION

**¶27** The juvenile court's order terminating Mother's parental rights to the children is affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA